# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) GEORGE COLLINS and | ) | |
| (2) ALRIKA COLLINS, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 6:22-cv-00318-JAR |
| | ) | |
| (1) STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| *Defendant*. | ) | |

---

## PLAINTIFFS' BRIEF AND RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS

---

Respectfully submitted,

**/s/*Terry M. McKeever***
Terry M. McKeever
OBA#21751
tmm@fylaw.com
**FOSHEE & YAFFE LAW FIRM**
P.O. Box 890420
Oklahoma City, Oklahoma 73189
Telephone:   (405) 378-3033

And

Preston J. Dugas III
*Admitted Pro Hac Vice*
pdugas@dcclawfirm.com
**DUGAS & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:   (817) 945-3061
Facsimile:   (682) 219-0761
**ATTORNEYS FOR PLAINTIFFS**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT.................................................................................................1

I. RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS...................................2

  A. The Policy ........................................................................................................................2

  B. Claim Handling Pre-Litigation...........................................................................................3

  C. The Filing of This Lawsuit and Discovery............................................................................10

II. ARGUMENTS AND AUTHORITY ......................................................................................15

  A. Legal standard for a motion for summary judgment .............................................................15

  B. Defendant's own statement of facts admits that there are material issues of fact precluding summary judgment for Plaintiffs' breach of contract claim. ........................................................16

  C.  Defendant wrongfully added additional terms and conditions to Plaintiffs' ALE benefits without authority under the Policy, misrepresented the Collins' duties, and wrongfully tried to coerce Collins into agreeing to the lesser repair amount……………………..…….…..…….……..28

  D.  Defendant Defendant's threat to pull the Collins' ALE despite their reasonable and legitimate dispute was reckless and in complete disregard to the Policy……………...........…..31

  III. CONCLUSION & PRAYER ...............................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                         **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................15

*Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798 (10th Cir. 2013) ...................28

*Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080, 1106 (Okla. 2005) ...........................................31

*Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162 (Okla. 2000) .......................32, 33

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................28

*Covington v. CSAA Fire & Cas. Ins.*, No. CIV-19-00718-PRW, 2020 WL 6265082 (W.D. Okla. Oct. 23, 2020) ........................................................................................................................17

*Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 377 (Okla. 1991)……………………………...…16

*Deela v. Annett Holdings, Inc.*, 2019 WL 55580095 (E.D. Okla. 2019)……………….............31

*Garnett Rd. Baptist Church v. Guideone Mut. Ins. Co.*, No. 19-CV-00286-GKF-JFJ, 2020 WL 6386870 (N.D. Okla. Oct. 30, 2020) ……………………………………………………..…20, 23

*Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998) ......................................................16

*Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675 (10th Cir. 2007) ....................................................16

*Jeri Gill McKenzie and Robert McKenzie v. Hanover Ins. Co.,* No. 21-258-JWB, (E.D. Okla Mar. 7, 2024) ......................................................................................................21

*Klintworth v. Valley Forge Ins. Co.*, No. 20-CV-0178-CVE-CDL, 2021 WL 816730 (N.D. Okla. Mar. 3, 2021) ………………………………………………………………………15

*Longoria v. Khachatryan*, 2016 WL 5372831 (N.D. Okla. Sept. 26, 2016) ................................32

*McCorkle v. Great Atlantic Ins. Co.,* 637 P.2d 583 (Okla. 1981) ................................................31

*Morgan v. State Farm Mut. Auto. Ins. Co.,* 488 P.3d 743 (Okla. 2021) ......................................17

*Nelson v. Am. Hometown Publ'g, Inc.,* 333 P.3d 962 (Okla. Civ. App. 2014)............................31

*Oulds v. Principal Mut. Life Ins.,* 6 F.3d 1431 (10th Cir. 1993) ................................................17

*Rodebush v. Okla. Nursing Homes, Ltd.,* 867 P.2d 1241 (Okla. 1993) ......................................31

*Thompson v. Shelter Mut. Ins.,* 875 F.2d 1460 (10th Cir. 1989) .....................................24, 28, 30

*Silverstein v. Federal Bureau of Prisons,* 559 F. App'x. 739 (10th Cir. 2014) ........................15

*Wiley v. Travelers Ins. Co.,* 534 P.2d 1293, 1295 (Okla. 1974) ....................................................16

**OTHER**

Oklahoma Uniform Jury Instruction-Civil, Instruction No. 23.21 ................................................16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) GEORGE COLLINS and | ) | |
| (2) ALRIKA COLLINS, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No. 6:22-cv-00318-JAR |
| | ) | |
| (1) STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| | ) | |
| *Defendant*. | ) | |

**PLAINTIFFS' BRIEF AND RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS**

Plaintiffs George Collins and Alrika Collins (the "Collins" or "Plaintiffs") respond in opposition to Defendant, State Farm Fire and Casualty Company's ("Defendant") Motion for Summary Judgment on Plaintiffs' Claims and file their brief in opposition. Plaintiffs respectfully request that the motion be denied and would show the Court as follows:

**PRELIMINARY STATEMENT**

The Collins suffered a devastating home fire on January 11, 2021, resulting in a constructive total loss and have been fighting their insurance company ever since that day to obtain all benefits rightfully owed under their Policy. Defendant has and continues to fail to pay the full amount owed for covered damage to the Collins' home and contents, and failed to pay additional living expenses owed under the Policy and therefore clearly

breaching its policy with the Collins. Worse, Defendant not only breached its contract but did so in bad faith recklessly by:

- Wrongfully withholding payment on the Collins' additional living expenses ("ALE") despite an ongoing reasonable dispute;
- Trying to force the Collins to settle their insurance claim for their dwelling despite having bona fide disagreement regarding Defendant's scope of loss;
- Failing to address the Collins' comprehensive contents estimate, concerns regarding the scope of loss for the dwelling; and request for continued ALE immediately following the Defendant's final supplemental payment toward the dwelling;
- Misconstruing and misrepresenting relevant Policy provisions; and
- Forcing Collins to bear the burden of investigating the claim and the complete scope and extent of the fire damage.

The Collins should be given an opportunity to hold Defendant liable for its bad faith acts or else Defendant will only be emboldened to continue to act with the same reckless disregard to thousands of other insureds in Oklahoma. Because the Collins provide more than a scintilla of evidence in support of each of their claims, summary judgment should be denied.

## I.     RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

### A. *The Policy*

1.     The Collins agree with Defendant's paragraph 1.

2.     The Collins agree with Defendant's paragraph 2.

3.     The Collins agree with Defendant's paragraph 3.

4.     The Collins agree with Defendant's paragraph 4.

5.     The Collins agree with Defendant's paragraph 5.

6.      The Collins agree with Defendant's paragraph 6 that the Policy contains this language.

7.      The Collins agree with Defendant's paragraph 7 that the Policy contains this language.

8.      The Collins agree with Defendant's paragraph 8 that the Policy contains this language.

9.      The Collins agree with Defendant's paragraph 9 that the Policy contains this language.

**B. *Claim Handling Pre-Litigation***

10.     The Collins agree with Defendant's paragraph 10.

11.     The Collins agree with Defendant's paragraph 11.

12.     The Collins agree with Defendant's paragraph 12.

13.     The Collins agree with Defendant's paragraph 13.

14.     The Collins agree with Defendant's paragraph 14.

15.     The Collins agree with Defendant's paragraph 15.

16.     The Collins agree with Defendant's paragraph 16.

17.     The Collins agree with Defendant's paragraph 17.

18.     The Collins agree with Defendant's paragraph 18.

19.     The Collins agree with Defendant's paragraph 19.

20.     The Collins agree with Defendant's paragraph 20.

21.     The Collins agree with Defendant's paragraph 21.

22.     The Collins agree with Defendant's paragraph 22.

23.     The Collins agree with Defendant's paragraph 23.

24.     The Collins agree with Defendant's paragraph 24.

25.     The Collins agree with Defendant's paragraph 25.

26.     The Collins agree with Defendant's paragraph 26.

27.     The Collins agree with Defendant's paragraph 27.

28.     The Collins agrees with Defendant's paragraph 28 but disagrees that these are relevant material facts as to the Collins' claims for breach of contract and the breach of duty of good faith and fair dealing.

29.     The Collins agrees with Defendant's paragraph 29 but disagrees that these are relevant material facts as to the Collins' claims for breach of contract and the breach of duty of good faith and fair dealing.

30.     The Collins agree with Defendant's paragraph 30.

31.     The Collins agree with Defendant's paragraph 31.

32.     The Collins agree with Defendant's paragraph 32.

33.     The Collins agree with Defendant's paragraph 33 but disagree that the sole reason was due to a lack of dedicated workout/home gym.

34.     The Collins agree with Defendant's paragraph 34.

35.     The Collins agree with Defendant's paragraph 35 but disagree ServPro advised that mitigation and tear out could begin. ServPro only asked Defendant if it could begin mitigation and tear out. Dkt. No. 68-2 at Bates No. 60.

36.     The Collins agree with Defendant's paragraph 36.

37.     The Collins agree with Defendant's paragraph 37.

38.     The Collins agree with Defendant's paragraph 38 but disagree that the housing fees were so high to not be an option.

39.     The Collins agree with Defendant's paragraph 39.

40.     The Collins agree with Defendant's paragraph 40.

41.     The Collins agree with Defendant's paragraph 41.

42.     The Collins agree with Defendant's paragraph 42.

43.     The Collins agree with Defendant's paragraph 43.

44.     The Collins agree with Defendant's paragraph 44.

45.     The Collins agree with Defendant's paragraph 45.

46.     The Collins agree with Defendant's paragraph 46.

47.     The Collins agree with Defendant's paragraph 47 but disagree that it was not reasonable for the Collins to stay in the hotel until May 5, 2021 to prepare to move and make arrangements.

48.     The Collins agree with Defendant's paragraph 48.

49.     The Collins agree with Defendant's paragraph 49 but disagrees the move to another property was necessary.

50.     The Collins agree with Defendant's paragraph 50.

51.     The Collins agree with Defendant's paragraph 51.

52.     The Collins agree with Defendant's paragraph 52.

53.     The Collins agree with Defendant's paragraph 53.

54.     The Collins agree with Defendant's paragraph 54.

55.     The Collins agree with Defendant's paragraph 55.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS                    5

56.     The Collins agree with Defendant's paragraph 56.

57.     The Collins agree with Defendant's paragraph 57.

58.     The Collins agree with Defendant's paragraph 58.

59.     The Collins agree with Defendant's paragraph 59.

60.     The Collins agree with Defendant's paragraph 60.

61.     The Collins agree with Defendant's paragraph 61.

62.     The Collins agree with Defendant's paragraph 62.

63.     The Collins agree with Defendant's paragraph 63.

64.     The Collins agree with Defendant's paragraph 64.

65.     The Collins agree with Defendant's paragraph 65.

66.     The Collins agree with Defendant's paragraph 66.

67.     The Collins agree with Defendant's paragraph 67.

68.     The Collins agree with Defendant's paragraph 68.

69.     The Collins agree with Defendant's paragraph 69.

70.     The Collins agree with Defendant's paragraph 70.

71.     The Collins agree with Defendant's paragraph 71.

72.     The Collins agree with Defendant's paragraph 72.

73.     The Collins agree with Defendant's paragraph 73.

74.     The Collins agree with Defendant's paragraph 74.

75.     The Collins agree with Defendant's paragraph 75.

76.     The Collins agree with Defendant's paragraph 76.

77.    The Collins agree with Defendant's paragraph 77 but disagree that the time to rebuild was set to expire on August 31, 2021. Defendant's paragraph 62 admitted that Defendant was still searching for a six (6) month housing lease option as of April 22, 2021 which indicates Defendant was at least allowing for the rebuild to continue into October as of April 22, 2021 as opposed to August 31, 2021. *See* Dkt. No. 68 at ¶ 62.

78.    The Collins agree with Defendant's paragraph 78.

79.    The Collins agree with Defendant's paragraph 79.

80.    The Collins agree with Defendant's paragraph 80.

81.    The Collins agree with Defendant's paragraph 81.

82.    The Collins agree with Defendant's paragraph 82 but disagree that CS Penisten-Wilbur sent a copy of the documents that were previously emailed again to PA Rupert, but instead that CS Penisten-Wilbur only sent a copy of the June 28, 2021 letter and advised that the requested documents were previously mailed on June 28, 2021. *See* Dkt. No. 68-2 at COLLINS CL 36-15K5-35N 0043 ("Emailed copy of letter sent 6t28t2021 advised letter and requested documents mailed 6/28/2021.").

83.    The Collins agree with Defendant's paragraph 83.

84.    The Collins agree with Defendant's paragraph 84.

85.    The Collins agree with Defendant's paragraph 85.

86.    The Collins agree with Defendant's paragraph 86.

87.    The Collins agree with Defendant's paragraph 87 but disagrees on Derek VanDorn's ("VanDorn") scope of work. VanDorn was hired to review estimates and "confirm the scope of work needed given the damages," but was not hired to create a scope

of work to repair the damages based on his own opinions on the extent of damages. *See* Dkt. No. 68-2 at COLLINS CL 36-15K5-35N 0042.

88.     The Collins agree with Defendant's paragraph 88.

89.     The Collins agree with Defendant's paragraph 89.

90.     The Collins agree with Defendant's paragraph 90.

91.     The Collins agree with Defendant's paragraph 91.

92.     The Collins agree with Defendant's paragraph 92.

93.     The Collins disagree with Defendant's paragraph 93. The cited material does not support this statement. *See* Dkt. No. 68-2 at COLLINS CL 36-15K5-35N 00. Additionally, this is hearsay within hearsay within hearsay and the claim file does not accurately reflect any discussion between the Collins' public adjuster Ian Rupert and the Collins.

94.     The Collins agree with Defendant's paragraph 94.

95.     The Collins agree with Defendant's paragraph 95 but disagree that PA Rupert was being confrontational.

96.     The Collins agree with Defendant's paragraph 96.

97.     The Collins agree with Defendant's paragraph 97.

98.     The Collins agree with Defendant's paragraph 98.

99.     The Collins agree with Defendant's paragraph 99.

100.     The Collins agree with Defendant's paragraph 100.

101.     The Collins agree with Defendant's paragraph 101.

102.     The Collins agree with Defendant's paragraph 102.

103.    The Collins agree with Defendant's paragraph 103.

104.    The Collins agree with Defendant's paragraph 104.

105.    The Collins agree with Defendant's paragraph 105.

106.    The Collins agree with Defendant's paragraph 106.

107.    The Collins agree with Defendant's paragraph 107.

108.    The Collins agree with Defendant's paragraph 108.

109.    The Collins agree with Defendant's paragraph 109.

110.    The Collins agree with Defendant's paragraph 110.

111.    The Collins agree the Claim File contains an event alleging the acts in Defendant's paragraph 111 occurred but disagree that the Collins did not intend to rebuild the property.

112.    The Collins agree the Claim File contains an event alleging the acts in Defendant's paragraph 112 occurred but disagree that the Collins did not intend to rebuild the property.

113.    The Collins agree with Defendant's paragraph 113.

114.    The Collins agree with Defendant's paragraph 114.

115.    The Collins agree with Defendant's paragraph 115 but disagree that Defendant issued a final settlement in February of 2021 as Defendant admits to issuing another payment for the Coverage A portion of the Claim as recent as October 11, 2021, paying $69,172.19 in additional to all previous payment for Coverage A. *See* Dkt. No. 68 at ¶107.

116.    The Collins agree with Defendant's paragraph 116.

117.   The Collins agree with Defendant's paragraph 117 but disagree about what Mrs. Collins allegedly told ServPro. This assertion of fact is hearsay within hearsay within hearsay and the claim file does not accurately reflect any discussion between ServePro and the Collins and then Defendant and ServPro.

118.   The Collins agree with Defendant's paragraph 118.

119.   The Collins agree with Defendant's paragraph 119.

120.   The Collins agree with Defendant's paragraph 120.

121.   The Collins agree with Defendant's paragraph 121.

122.   The Collins agree with Defendant's paragraph 122.

123.   The Collins agree with Defendant's paragraph 123.

124.   The Collins agree with Defendant's paragraph 124.

**C.** *The Filing of This Lawsuit and Discovery*

125.   The Collins agree with Defendant's paragraph 125.

126.   The Collins agree with Defendant's paragraph 126 but disagree with any legal conclusions Defendant makes regarding the drafting and filing of the original Petition filed *pro se*.

127.   The Collins agree with Defendant's paragraph 127.

i.      *Deposition of Plaintiff George Collins*

128.   The Collins agree with Defendant's paragraph 128 only as to the fact that the Deposition of George Collins occurred on November 29, 2023. Defendant's allegation that Mr. Collins was highly responsive during the deposition is an opinion and not a statement

of fact. Further, any comments by Defendant as to Mr. Collins' alleged lack of knowledge and if that constitutes "basic knowledge" is also a conclusion and not a statement of fact.

129.    The Collins agree with Defendant's paragraph 129 but disagree that Mr. Collins' testimony is relevant here based on the fact that Mr. Collins' has not been designated as a safety or causation expert in this lawsuit. *See* Fed. R. Civ. P. 702.

130.    The Collins agree with Defendant's paragraph 130.

131.    The Collins disagree with Defendant's framing of Mr. Collins' deposition testimony as stated in paragraph 131. Mr. Collins began explaining the issues created by Defendant during the time it handled his insurance claim and Defendant's counsel turned to a new topic. *See* Dkt. No. 68-4 at 107:22–25.

132.    The Collins agree with Defendant's paragraph 132 but object to the relevance of the facts stated in paragraph 132. Any facts or testimony surrounding the Collins' previous 2017 bankruptcy filing do not have the tendency to make a fact of consequence in this lawsuit, more or less likely than without the cited to deposition testimony. *See* Fed. R. Civ. P. 401.

133.    Collins agree, in part, with Defendant's paragraph 133 but object to the relevance of the facts stated in paragraph 133. Any facts or testimony surrounding the Collins' previous 2017 bankruptcy filing do not have the tendency to make a fact of consequence in this lawsuit, more or less likely than without the cited to deposition testimony. *See* Fed. R. Civ. P. 401. Mr. Collins on redirect clarified that the Bankruptcy schedule requested the value (at the time of the submission) and the State Farm form requested the replacement costs (and then depreciated for age). *See* Plaintiffs' Ex. 7,

Excerpt from G. Collins deposition, and excerpt of State Farm contents form and Bankruptcy schedule (excerpted from exhibits to the deposition).

134.   The Collins agree with Defendant's paragraph 134 but object to the relevance of the facts stated in paragraph 134. Any facts or testimony surrounding the Collins' previous 2017 bankruptcy filing do not have the tendency to make a fact of consequence in this lawsuit, more or less likely than without the cited to deposition testimony. *See* Fed. R. Civ. P. 401

135.   The Collins agree with Defendant's paragraph 135 but object to the relevance of the facts stated in paragraph 135. Any facts or testimony surrounding the Collins' previous 2017 bankruptcy filing do not have the tendency to make a fact of consequence in this lawsuit, more or less likely than without the cited to deposition testimony. *See* Fed. R. Civ. P. 401

136.   The Collins agree in part with Defendant's paragraph 136 but object to the relevance of the facts stated in paragraph 136. Any facts or testimony surrounding the Collins' previous 2017 bankruptcy filing do not have the tendency to make a fact of consequence in this lawsuit, more or less likely than without the cited to deposition testimony. *See* Fed. R. Civ. P. 401. Defendant further conflates the wholly irrelevant asset schedules for the dismissed Bankruptcy proceeding (which have a different purpose and seek a different value) with the State Farm contents form which seeks replacement costs (and the age to depreciate). *See* the response to Fact No. 133, and Plaintiff's Ex. 7.

   ii.   ***Deposition of Plaintiffs' Public Adjuster Ian Rupert***

137.    The Collins agree with Defendant's paragraph 137 but disagree that Defendant had not time to review the documents produced prior to his deposition. Defendant has admitted to receiving various documents from Ian Rupert throughout the Collins' insurance claim, including a nearly 800-page proof of loss it admits was received on July 27, 2021. *See* Dkt. No. 68 at ¶¶ 84–85.

138.    The Collins object to the extent that Defendant's citations do not correspond to the evidence. For example, Defendant cites to pages 30 and 31 of Ian Rupert's deposition transcript but those pages are missing from Defendant's exhibit. The Collins also do not admit or deny the remainder of paragraph 138 because it calls for a legal conclusion.

139.    The Collins agree with Defendant's paragraph 139.

140.    The Collins disagree with Defendant's paragraph 140's characterization of Ian Rupert's reliance on Kevin Dandridge's report regarding safety protocols when creating the Proof of Loss. Ian Rupert specifically stated that he reviewed the report and then "wrote what [he] believed [he] could support for OSHA safety." *See* Dkt. No. 68-3 at 175:24–176:1 (Deposition testimony of Ian Rupert).

141.    The Collins agree with Defendant's paragraph 141.

### iii.    *Deposition of Kevin Dandridge of Life 1 Safety*

142.    The Collins agree with Defendant's paragraph 142.

143.    The Collins disagree with the characterization of Defendant's paragraph 143. Kevin Dandridge testified he was not making a coverage decision himself but does not state that the report should not be used to assist in making claims decisions including, but not limited to, the reasonable and necessary costs to return Plaintiffs' Property back to its

pre-loss condition. *See* Dkt. No. 68-5 at 60:10–20 (Deposition transcript of Kevin Dandridge).

144.    The Collins agree with Defendant's paragraph 144.

145.    The Collins agree with Defendant's paragraph 145.

146.    The Collins agree with Defendant's paragraph 146.

147.    The Collins agree with Defendant's paragraph 147.

148.    The Collins agree with Defendant's paragraph 148.

149.    The Collins agree with Defendant's paragraph 149.

    *iv.    Expert Report of Derek VanDorn*

150.    The Collins agree with Defendant's paragraph 150.

151.    The Collins agree with Defendant's paragraph 151.

152.    The Collins agree with Defendant's paragraph 152 only to the extent that Defendant's paragraph 152 reflects the opinions of Mr. VanDorn; but the Collins disagree as to the accuracy of VanDorn's opinion.

153.    The Collins agree with Defendant's paragraph 153 only to the extent that Defendant's paragraph 153 reflects the opinions of Mr. VanDorn; but the Collins disagree as to the accuracy of VanDorn's opinion.

154.    The Collins agree with Defendant's paragraph 154 only to the extent that Defendant's paragraph 154 reflects the opinions of Mr. VanDorn; but the Collins disagree as to the accuracy of VanDorn's opinion.

155.    The Collins agree with Defendant's paragraph 155 only to the extent that Defendant's paragraph 155 reflects the opinions of Mr. VanDorn; but the Collins disagree as to the accuracy of VanDorn's opinion.

156.    The Collins agree with Defendant's paragraph 156 only to the extent that Defendant's paragraph 156 reflects the opinions of Mr. VanDorn; but the Collins disagree as to the accuracy of VanDorn's opinion.

## II.

## ARGUMENTS AND AUTHORITY

### A.    Legal standard for a motion for summary judgment.

Summary judgment on a party's cause of action is only appropriate when there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Klintworth v. Valley Forge Ins. Co.*, No. 20-CV-0178-CVE-CDL, 2021 WL 816730, at *12 (N.D. Okla. Mar. 3, 2021), *aff'd*, No. 21-5029, 2022 WL 1021750 (10th Cir. Jan. 31, 2022). "Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Silverstein v. Federal Bureau of Prisons*, 559 F. App'x. 739, 752 (10th Cir. 2014).

"In essence, the inquiry for the Court is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Klintworth v. Valley Forge Ins. Co.*, No. 20-CV-0178-CVE-CDL, 2021 WL 816730, at *12 (N.D. Okla. Mar. 3, 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "In its review, the Court construes the

record in the light most favorable to the party opposing summary judgment." *Id.* (citing *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998)).

**B.    Defendant's own statement of facts admits that there are material issues of fact precluding summary judgment for Plaintiffs' breach of contract claim.**

Here, Defendant itself admits in its own Motion for Summary Judgment that there are numerous issues of material fact that preclude summary judgement regarding the Collins' breach of contract claim. *See* Dkt. No. 68 at ¶¶ 152, 154, 155 (admitting Defendant's hired personnel determined the scope of loss and amount of loss was less than what the Collins' engineer, safety consultant, and public adjuster found).

Federal courts sitting in diversity jurisdiction apply the law of the state. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 683 (10th Cir. 2007). In Oklahoma, where parties "contract for insurance to cover such risks . . . they are bound by the terms of the contract." *Wiley v. Travelers Ins. Co.*, 534 P.2d 1293, 1295 (Okla. 1974). Generally, courts must apply the terms and conditions of the insurance policy (i.e., the contract) as written and should not interject additional language. *Id.*

"The general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy." *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 377 (Okla. 1991). "A contract is breached when a party does not do what [he/she/it] promised to do in the contract." *See* Oklahoma Uniform Jury Instruction-Civil, Instruction No. 23.21. In essence, when an insured is not paid the full amount of benefits owed under the policy there is a

viable breach of contract claim. *See e.g.*, *Oulds v. Principal Mut. Life Ins.*, 6 F.3d 1431 (10th Cir. 1993).

Here, genuine issues of material facts exist as for Coverages A, B, and C under the Collins' insurance claim which preclude summary judgment.

i.     *Coverage A*

The policy at issue here states that "[Defendant] will pay for accidental direct physical loss to the property described in Coverage A" which includes "the dwelling". *See* Dkt. No. 68-1 at 16, 23. Defenant does not argue that an exclusion applies to limit coverage under the Policy. *See* Dkt. No. 68 at 33–36; *Covington v. CSAA Fire & Cas. Ins.*, No. CIV-19-00718-PRW, 2020 WL 6265082, at *5 (W.D. Okla. Oct. 23, 2020) (finding coverage precluded due to damage being caused by "construction faults, defects, or inadequacies.").

Instead, Defendant makes the simple argument that it does not owe anymore for the cost of damages under Coverage A (i.e., the Collins' home) than what it has already paid. *See* Dkt. No. 68 at 33–34 (Defendant's Coverage A discussion). Therefore, so long as there is evidence that Defendant has not paid for damages covered under the Policy, or that Defendant failed to pay the full amount owed for covered damages, summary judgment is not appropriate. *See Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748–749 (Okla. 2021) (reciting elements for breach of contract and recognizing a breach occurs "when the insurer . . . refuse[s] to pay benefits on a valid claim").

Following the Collins' loss, the Collins retained engineer Chad Williams ("Williams") to inspect their Property and "[d]etermine the extent of fire damage to the dwelling as a result of a fire reported on January 11, 2021". *See* Dkt. No. 68-6 at 7; *see*

*also* Plaintiff's Ex. 1 at 2 (Valor Report). Williams performed his personal inspection of the Property less than five (5) months after the loss occurred on inspected on May 4, 2021. Plaintiff's Ex. 1 at 4 ("Chad T. Williams, P.E. (Valor FES) performed an evaluation of the residence on May 4, 2021.").

Following his inspection and evaluation of the Collins' dwelling Williams determined the vast majority of the property was damaged by the January 11, 2021 fire and specifically included in his scope of repairs "the replacement of the kitchen cabinets, replacement of all reflective sheathing in Attic 2, reframing of an entire wall in Attic 2, replacement of all roof and second-floor framing around the Bonus Rooms, and the replacement of four (4) windows." *See* Dkt. No. 68 at 152 (reciting VanDorn's disagreement with a portion of Williams' findings and scope of loss); *see also* Plaintiff's Ex. 1 at 2–3.

Williams' report was provided to Defendant on July 27, 2021. *See* Dkt. No. 68-2 at 0042-0043 ("Engineer report starts on page 74 and appears to have been inspected 5/4/21."). In response to Williams' engineer report Defendant immediately hired Derek VanDorn ("VanDorn") with Berryman Enterprises to review Defendant's estimate in comparison with the scope of damages within Williams' report. *See* Dkt. No. 68-2 at 0042.

VanDorn reviewed Williams' report and instead of conforming the scope of Defendant's estimate to match Williams' scope of loss, VanDorn wrote a report attempting to rebut portions of Williams' findings. *See* Dkt. No. 68-6 at 45–47 (Opinion #1 of VanDorn's report were unfounded criticisms of Williams' engineer report).

Defendant discussed VanDorn's review of Williams' report and based on this refused to include as part of the scope of loss "the replacement of the kitchen cabinets, replacement of all reflective sheathing in Attic 2, reframing of an entire wall in Attic 2, replacement of all roof and second-floor framing around the Bonus Rooms, and the replacement of four (4) windows" in its estimate. *See* Dkt. No. 68-2 at 0032–0033 ("[VanDorn] reviewed the engineer report and discussed with engineer at inspection"); *see also* Dkt. No. 68 at 152.

Williams' report directly attributes the damage and scope of repairs noted above to the January 2021 fire. *See* Plaintiff's Ex. 1 at 6. For example, Williams explains that on the second floor "it was evident that the fire had compromised the floor, wall, and roof framing over the southwest side of the dwelling. . . . [and] appeared to . . . extend[] toward the framing above the northwest garage. Plaintiff's Ex. 1 at 6. Williams even reinspected the Property with VanDorn and did not withdraw or change his opinions. *See* Dkt. No. 68-2 at 0033 (Noting Heather Stanley met the Collins' Public Adjuster Ian Rupert, VanDorn, and engineer Williams at the Collins' Property on September 9, 2021).

Moreover, the Collins' Public Adjuster Ian Rupert also explained why items in Williams scope of loss are correct despite VanDorn's disagreement. *See* Dkt. No. 68-3 at 176:10–25. For example, when asked about Williams' conclusion that the kitchen cabinets must be replaced Rupert explained "[t]he smoke was extremely heavy and a significant portion of the cabinets were burned to a crisp essentially and that the drywall behind the cabinets were . . . damaged." *See* Dkt. No. 68-3 at 176:10–25.

This is further evidenced by the fact that the Collins' evidence shows the cost to properly repair the dwelling according to Williams' scope of loss and Dandridge's safety protocol report is $515,249,55[1] where Defendant has only estimated $317,328.20 as the full cost of damages. *See* Plaintiffs' Ex. 2 at 2, 46 (Plaintiffs' damage's expert's estimate which is based on Williams and Kevin Dandridge's reports); *see also* Dkt. No. 68-7 at 51 (summarizing VanDorn's "bid" amount for damages to the Collins' dwelling).

Moreover, assuming *arguendo*, if Defendant was correct about disregarding all of Kevin Dandridge's entire safety protocol report[2] Plaintiffs' damages expert's estimate still shows that Defendant underpaid the ACV value of damage to the Collins by at least $49,672.075 based on Williams' report alone.[3]

As a result, there is evidence that Defendant failed to create the proper scope of covered damages under the Policy and that the Collins are owed more than what Defendant contends is owed under Coverage A. *See Garnett Rd. Baptist Church v. Guideone Mut. Ins. Co.*, No. 19-CV-00286-GKF-JFJ, 2020 WL 6386870, at *6 (N.D. Okla. Oct. 30, 2020) (noting areas of dispute regarding specific or localized areas of coverage in an insurance

---

[1] Even fully deducting Kevin Dandridge's $166,236.00 safety protocols estimate from Plaintiffs' damages' expert's estimate, the replacement cost value ("RCV") of damages is $349,013.55 and the actual cash value ("ACV") of damages is $336,015.84. *See* Plaintiffs' Ex. 2 at 44, 46 (deducting Safety/OSHA amount of $166,236.00 from the RCV and ACV columns).

[2] Defendant's hired personnel VanDorn admits to adding additional safety items to his estimate as well after reviewing Kevin Dandridge's safety protocol report. *See* Dkt. No. 68-2 at 0033 ("[VanDorn] added the safety items he felt were needed like the roof harness.").

[3] Defendant claims in its motion to have paid $286,343.09 to date on Coverage A. *See* Dkt. No. 68 at 29–30 (adding $217,170.90 to $69,172.19). Even fully deducting Kevin Dandridge's $166,236.00 safety protocols estimate from Plaintiffs' damages' expert's estimate, the actual cash value ("ACV") of damages is still estimated to be $336,015.84. *See* Plaintiffs' Ex. 2 at 44, 46 (deducting Safety/OSHA amount of $166,236.00 from the RCV and ACV columns).

claim may be argued to the jury). [4] *see also Jeri Gill McKenzie and Robert McKenzie v. Hanover Ins. Co.*, No. 21-258-JWB, Dkt. No. 78 at page 8 (E.D. Okla Mar. 7, 2024).

For these reasons Defendant's Motion for Summary Judgment for Plaintiffs' breach of contract claim pertaining to Coverage A should be denied.

### ii.    Coverage B

Similarly, there is sufficient evidence that Defendant has failed to properly value the damages to the Collins' contents caused by the January 2021 fire.  Defendant contends that it properly determined what contents need to be replaced versus cleaned and therefore owes no more under Coverage B. *See* Dkt. No. 68 at 34–35 (Defendant's Coverage B discussion).

However, the Collins' home was devastated by a severe fire which not only caused structural damage but extensive damage to the Collins' personal property/contents. *See* Dkt. No. 68-2 at 0001 (marking the severity of the loss as "Uninhabitable"). Following the loss Plaintiff's Public Adjuster inspected the Collins' Property and visited the buildings where the Collins' contents were stored to examine and document the contents. *See* Plaintiffs' Ex. 3 at 133:24–134:6; 140:5–6, 18–21.

Rupert created and presented to Defendant on or about July 27, 2021 the Collins' proof of loss with a portion of the proof of loss focusing on his inspection and review of fire and smoke damaged contents. *See Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1463 (10th Cir. 1989) (noting an insureds' proof of loss was sufficient evidence to determine if

---

[4] *See also Jeri Gill McKenzie and Robert McKenzie v. Hanover Ins. Co.*, No. 21-258-JWB, Dkt. No. 78 at page 8 (E.D. Okla Mar. 7, 2024).

a jury award exceed the amount supported by the evidence); *See* Dkt. No. 68-2 at 0042-0043 ("Contents are pages 376-413", "492-794 pages are photographs apparently taken by the PA 4/30/21").   The proof of loss contained photographs and a detailed line-item contents estimate for the proper cost to repair and replace each content item that was damaged along with support for the cost of each item. *See* Plaintiffs' Ex. 3 at 133:24–134:6; *see also* Plaintiffs' Ex. 4 at 1730–1767.

Based Rupert's inspection, research, and documentation of each content item that was damaged by the fire the actual cash value cost of damages to the Collins' contents ca was $93,071.99. *See* Plaintiff's Ex. 4 at 1730–1767.   Along with photographing the contents, Rupert even included the source for value of the hundreds of individual content items in in the contents portion of the estimate below each line item. *See, e.g.*,  Plaintiff's Ex. 4 at 1730 (including under line item 449: "Price Verified: Frigidaire 26.8-cu fl 3-Door French Door Refrigerator with Single Ice Maker (Black Stainless Steel) ENERGY STAR, FFHB2750TD. Sears, $2,449.99. 7/7/2021 Item found from www.bestbuy.com on 7/1612021"); Plaintiffs' Ex. 6 (photograph 364 taken by Ian Rupert of the refrigerator at the Collins' home).

Despite Defendant receiving Rupert's detailed content estimate, the price sources contained within the estimate, along with the photographs of damage in support, Defendant has only paid $67,944.11. *See* Plaintiffs' Ex. 5 (documenting the total amount paid under Coverage B). Defendant acknowledged the contents estimate provided to them and on October 1, 2021 claimed to be in the process of reviewing the contents estimate. *See* Dkt. No. 68-2 at 0032 ("Personal Property: We are processing the contents list you provided.").

Based on the evidence above there is more than sufficient evidence that shows a genuine dispute of material fact that Defendant failed to pay the Collins the full amount owed under their Coverage B for their content that was damaged by the smoke and fire during the January 2021 fire. *See Garnett Rd. Baptist Church v. Guideone Mut. Ins. Co.*, No. 19-CV-00286-GKF-JFJ, 2020 WL 6386870, at *6 (N.D. Okla. Oct. 30, 2020) (noting areas of dispute regarding specific or localized areas of coverage in an insurance claim may be argued to the jury).

Finally, any information pertaining to the Collins' previous bankruptcy filing has no bearing on the value of the contents within in Rupert's contents estimate. Rupert's contents estimate clearly cites to other independent sources for the value of the contents and does not rely on Plaintiffs for the value of the contents. *See, e.g.*,  Plaintiff's Ex. 4 at 1730 (including under line item 449: "Price Verified: Frigidaire 26.8-cu fl 3-Door French Door Refrigerator with Single Ice Maker (Black Stainless Steel) ENERGY STAR, FFHB2750TD. Sears, $2,449.99. 7/7/2021 Item found from www.bestbuy.com on 7/1612021"); *see also* Plaintiff's Ex. 7, Excerpt from G. Collins deposition, and excerpt of Bankruptcy schedule and State Farm contents form (excerpted from exhibits to the deposition) (explaining and showing the difference in the requested values).

For these reasons Defendant's Motion for Summary Judgment for Plaintiffs' breach of contract claim pertaining to Coverage B should be denied.

### iii.    Coverage C

Defendant wrongfully stopped payment on the Collins' additional living expenses ("ALE") under Coverage C despite the ongoing dispute regarding the scope of loss of the

Collins' dwelling for the covered fire damage. As a result, Defendant wrongfully withheld payment under the Policy by failing to pay the Collins ALE throughout the claims process as promised under the Policy. *See Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) (finding "[a]n unresolved dispute as to other policy claims does not as a matter of law excuse the failure of the insurer to pay living expense benefits, when the liability for such benefits is undisputed."); *see also* Dkt. No. 68-1 at 0019 (setting out that Defendant will pay the increase in costs incurred for the time to repair or replace the premise, the time required to settle elsewhere, or 24 months).

Under the Policy ALE payments are owed "[w]hen a loss insured causes the residence premises to become uninhabitable." Dkt. No. 68-1 at 0019. At that time Defendant promised to "pay the reasonable and necessary increase in cost incurred by an insured to maintain their normal standard of living for up to 24 months." Dkt. No. 68-1 at 0019. However, the Policy limits payment of "incurred costs for the shortest of: a) the time required to repair or replace the premises; b) the time required for your household to settle elsewhere; or c) 24 months." Dkt. No. 68-1 at 0019.

The Collins had a Policy Limit of $121,230.00 under Coverage C. *See* Dkt. No. 68-1 at 0003. Over the course of the Collins' insurance claim Defendant alleges it paid $62,067.31.[5] *See* Dkt. No. 68 at 35; *see also* Plaintiffs' Ex. 8 (Summary of payments on the Collins' insurance claim).

---

[5] Defendant's offer no citation for the amount paid by Defendant to the Collins for ALE.

The Collins' home was devastated by a severe fire which caused severe structural damage throughout the Collins' home making the dwelling uninhabitable. *See* Dkt. No. 68-2 at 0001 (Defendant marked the severity of the loss as "Uninhabitable").

Based on the covered loss from the fire and the uninhabitable state of the Collins' home Defendant paid the Collins' ALE throughout the majority of the insurance claim without issue. *See* Plaintiffs' Ex. 8 (making ALE payments in the amount of $27,018.32 on June 7, 2021 and again on December 2, 2021 for $35,842.87). However, soon after Defendant received VanDorn's bid Defendant took the position that the portion of the Collins' insurance claim regarding the dwelling was complete and began demanding the Collins' sign a contract to rebuild the house or risk losing their ALE coverage. *See* Dkt. No. 68-2 at 0023–0024 ("We are not in a position to extend ALE beyond today. The insured has not moved forward with signing a contract . . . .").

But the Policy makes no such requirements and Defendant points to no evidence of such a requirement in the Policy. *See* Dkt. No. 68 at 36. Defendant simply states that "State Farm agreed to continue [ALE] through November 30, 2021; however, indicated Plaintiffs needed to present a contract to repair the home." *See* Dkt. No. 68 at 36; Dkt. No. 68-2 at . Moreover, the Collins' the Collins disagreement regarding the scope and cost of damages. *See* Dkt. No. 68 at 35–36 (Defendant's Coverage C discussion).

But during this time, the Collins were still engaged in the coverage dispute regarding the extent of damage to their dwelling caused by the fire as was evidenced by Defendant's own supplemental payment on October 12, 2021 for $69,172.19 which was in part based on the Collins' engineer's report. *See* Plaintiffs' Ex. 8 (noting supplemental payment of

$69,172.19 for Coverage A based on VanDorn's opinions); Dkt. No. 68-2 at 0030 ("[VanDorn] feels his review of the engineer report did contribute more to his evaluation."); *see also* Dkt. No. 68-2 at 0029 (sending VanDorn's estimate to the Collins' Public Adjuster Ian Rupert on October 19, 2021). Collins disagreed with the scope of repairs that Defendant accepted based on VanDorn's bid because it left several major items out that the Collins' engineer Williams found required full replacement based on the fire damage. *See* Dkt. No. 68-6 at 44–47 (disputing Williams' findings as the basis for VanDorn's bid); *see also* Plaintiffs' Ex. 9 (notifying Defendant of disputes regarding the scope of the loss for the dwelling).

Moreover, Defendant was also aware that coverage issues regarding the Collins' insurance claim may result in addition supplemental payments especially considering the fact that Defendant had just paid almost $70,000 nearly a year after Defendant's initial payment for the dwelling under Coverage A.

Based on the Collins' bona fide disagreement with Defendant's scope of loss for the dwelling the Collins' Public Adjuster Ian Rupert submitted a letter to Defendant on December 22, 2021 requesting any deadline/suit limitation under the Policy be extended from January 11, 2022 to March 31, 2022. Plaintiffs' Ex. 9 at 1. Rupert's letter specifically noted that because of the "complexity of this claim, it is necessary for additional time to respond and or address any differences between our dwelling scope and that of [Defendant's] chosen expert." Plaintiffs' Ex. 9 at 1.

Instead of acknowledging the remaining disagreements between Defendant and the Collins and agreeing to continue ALE payment while working to discuss these disputes

Defendant replied denying the request and declining additional ALE payment on the Collins' Claims. *See* Dkt. No. 68-2 at 0023 ("[W]e are not able to extend the suits language outlined in the policy."); *see also* Dkt. No. 68-2 at 0023 (issued payment . . . for final hotel 11/23-11/30).

At best Defendant still owed Collins six more months of ALE from when Defendant paid the Collins' the supplemental ACV damages for their dwelling. Defendant estimated the time to repair would be six (6) to eight (8) months. *See* Dkt. No. 68-2 at 799-0801. Defendant made its final supplemental payment for covered damages to the dwelling under Coverage A on October 12, 2021. Dkt. No. 68-2 at 0030. ("[M]ailed COV A and COV B drafts to PA."). Therefore, based on the Policy language that allows for ALE for at least the time of repair, and Defendant's own estimated time of at least six months to the repair, Defendant would still owe the Collins additional ALE payments up to April 12, 2022. *See* Dkt. No. 68-1 at 0019 (owing ALE for the least of time to repair, time to relocate, or 24 months); Dkt. No. 68-2 at 799-0801 (claiming at least six months for the time to repair).

As a result, Defendant wrongfully and prematurely ended the Collins' ALE payments owed under the Policy in further breach of the contract. *See Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) (holding a carrier may not withhold living expenses even where a bona fide dispute between the parties exist as to the costs of repair and the parties have not agreed upon repair costs); Dkt. No. 68-2 at 0026 (claiming that Defendant "feel[s]" like it paid for the reasonable and necessary repairs).

There is sufficient evidence that the Collins are not precluded from recovering additional ALE benefits under the contract including up to the Policy Limits for the

remaining time left under the Policy. *See Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1461 (10th Cir. 1989) (noting insured was awarded "$3,000 for additional living expenses" where the insurance carrier wrongfully stopped paying ALE based on a disagreement as to the cost of repairs). For these reasons, Defendant has failed to carry its burden and show that additional ALE benefits are not owed under the Policy and therefore, Defendant's Motion for Summary Judgment on Coverage C should be denied.

**C.     Defendant wrongfully added additional terms and conditions to Plaintiffs' ALE benefits without authority under the Policy, misrepresented the Collins' duties, and wrongfully tried to coerce Collins into agreeing to the lesser repair amount.**

An insurance company's breach of the duty of good faith and fair dealing (or "bad faith") is an "independent and intentional tort" in Oklahoma. *See McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).  To make a prima facie case against an insurance company for bad faith, Plaintiffs must establish: (1) they were entitled to coverage under the insurance policy; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with Plaintiffs; and (4) the insurer's violation of its duty of good faith was the direct cause of Plaintiffs' injury. *See Automax Hyundai S., L.L.C. v. Zurich Am. Ins. Co.*, 720 F.3d 798, 810 (10th Cir. 2013).

Additionally, a breach of the duty of good faith and fair dealing can be shown where there is "evidence that the insurer . . . tried to make the insured 'surrender his policy or disadvantageously settle a nonexistent dispute.'" *See Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989).

As noted above, Defendant wrongfully made the premature decision to cut short the Collins' insurance Claim by unilaterally ignoring their bona fide disputes regarding the scope of loss for the dwelling and instead demanding the Collins sign a contractor's contract to repair the dwelling in order for their ALE payments to continue.  Defendant misrepresented the terms of the policy to the Collins when it claimed it would no longer owe the Collins additional ALE without first signing a contract to repair the damage following Defendant's supplemental payment. *See* Dkt. No. 68-2 at 0024.

The Policy sets no such requirement for ALE payments and only limits payment to the "incurred costs for the shortest of: a) the time required to repair or replace the premises; b) the time required for your household to settle elsewhere; or c) 24 months." Dkt. No. 68-1 at 0019. At the time of Defendant's last ALE payment which was November 30, 2021, none of these time periods had occurred and as a result, the Collins were owed additional ALE payments under the Policy. *See* Dkt. No. 68-1 at 0019.

In spite of the fact that none of the time periods that stop ALE payments had occurred Defendant continued to try and coerce the Collins into prematurely signing a contract to repair the dwelling based on Defendant's payments at that time or lose their ALE benefits. *See* Dkt. No. 68-2 at 0024 (noting the insured has not moved forward with signing a contract following Defendant's initial and supplemental ACV payments); *see also* Plaintiffs' Ex. 9 (notifying Defendant of the Collins' wish to further discuss the scope of loss for the dwelling following Defendant's supplemental payment).

When Defendant stopped its ALE payments it wrongfully withheld policy benefits in bad faith because "[a]n unresolved dispute as to other policy claims does not as a matter

of law excuse the failure of the insurer to pay living expense benefits, when the liability for such benefits is undisputed." *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989). The court in *Thompson* remarked that this "especially is true with additional living expense payments, the function of which is to enable the insured to maintain, insofar as possible, the pre-fire standard of living during the period of repair and replacement." *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989).

The Collins had clearly communicated their intention to repair the dwelling but at that time maintained a bona fide dispute regarding the scope of loss. *See* Plaintiffs' Ex. 9 at 1 (notifying Defendant of the Collins' bona fide dispute regarding the scope of loss for the dwelling); Dkt. No. 68-2 at 0026 (noting  Collins stated they were "planning to rebuild the home and are still searching for temporary housing").

As explained previously, at best, Defendant still owed Collins six more months of ALE from when Defendant paid the Collins' the supplemental ACV damages for their dwelling. Defendant estimated the time to repair would be six (6) to eight (8) months. *See* Dkt. No. 68-2 at 799-0801.  Defendant made its final supplemental payment for covered damages to the dwelling under Coverage A on October 12, 2021. Dkt. No. 68-2 at 0030. ("[M]ailed COV A and COV B drafts to PA."). Therefore, based on the Policy language that allows ALE for at least the time of repair, and Defendant's own estimated time to repair the damages being six months, Defendant would still owe Collins additional ALE payments up to April 12, 2022. *See* Dkt. No. 68-1 at 0019 (owing ALE for the least of time to repair, time to relocate, or 24 months); Dkt. No. 68-2 at 799-0801 (claiming at least six months for the time to repair).

There is at least sufficient evidence to support that Defendant wrongfully terminated the Collins' ALE benefits owed under the Policy based on Defendant's misrepresentation that the Collins had to sign a contractor's agreement to repair the dwelling to be entitled to ALE payments. *See* Dkt. No. 68-2 (noting the demand to produce a signed contract to repair the dwelling). As a result, Defendant's Motion for Summary Judgement on Plaintiffs' claim for Breach of the Duty of Good Faith and Fair Dealing should be denied. *See McCorkle*, 637 P.2d at 587 (if there is conflicting evidence regarding reasonableness of conduct, question of bad faith is for jury).

**D.    Defendant's threat to pull the Collins' ALE despite their reasonable and legitimate <u>dispute was reckless and in complete disregard to the Policy.</u>**

Punitive damages are available under Oklahoma law where, as here, "there is competent evidence of a reckless disregard by the defendant of the plaintiff's rights from which malice and evil intent may be inferred." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1106 (Okla. 2005). "One acts with reckless disregard if he was either aware, or did not care, that there was a substantial and unnecessary risk that his conduct would cause serious injury to others…" *Therrien v. Target Corp.*, 617 F.3d 1242, 1259 (10th Cir. 2010) (quotations and citations omitted).

"[P]unitive damages, like compensatory damages, do not stand alone as a separate cause of action; they constitute an element of damage subject to proof in connection with [Plaintiff's] negligence claim." *Deela v. Annett Holdings, Inc.*, 2019 WL 55580095 at *2 (E.D. Okla. 2019) (citing *Nelson v. Am. Hometown Publ'g, Inc.*, 333 P.3d 962 (Okla. Civ. App. 2014)) (internal quotations and alterations omitted). "[T]here is little danger of

prejudice in waiting for the facts to be presented to the jury. A decision regarding a punitive damages instruction can be made at that time." *Id.* (quoting *Longoria v. Khachatryan*, 2016 WL 5372831 (N.D. Okla. Sept. 26, 2016)). "[P]roof for punitive damages will probably overlap with that of the underlying cause of action." *See Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247-1248 (Okla. 1993).

As described above, Defendant wrongfully misrepresented the Policy coverage regarding ALE to the Collins and prematurely cut off their ALE payments. *See Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) ("An unresolved dispute as to other policy claims does not as a matter of law excuse the failure of the insurer to pay living expense benefits, when the liability for such benefits is undisputed."); *see also* Dkt. No. 68-1 at 0019 (explaining the limitations for ALE coverage). Defendant represented to the Collins that unless the Collins immediately produced a signed contract with a contractor to rebuild the Property that the Collins would no longer be owed additional ALE payments. *See* Dkt. No. 68-2 at 0024.

Based on this misrepresentation Defendant ceased making additional ALE payments for the Collins' additional living expenses. *See* Dkt. No. 68-2 at 0024. Defendant's decision "was not based on any reasonable or legitimate ground, but was merely a feigned or contrived attempt to gain some advantage in regard to settlement [the Collins' insurance] claim." *See Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 176 (Okla. 2000), as corrected (July 25, 2000), as corrected (Aug. 9, 2000), as corrected (Jan. 16, 2001); Dkt. No. 68-1 at 0019 (not requiring signed contract to repair property prior to ALE payments being owed). From this a jury could easily infer Defendant

was attempting to settle the Collins' claim for fire damage to the dwelling in an attempt to limit its own liability; and that Defendant did so disregarding the Collins' rights under the Policy for ALE benefits during the claim process, or the Collins' right to be paid the full amount for the direct physical loss to their dwelling caused by the January 2021 fire. *See id.* (upholding trial court's submission of punitive damages to a jury where "insurer acted in reckless disregard for the rights of Barnes and a finding of a complete indifference to its duty to treat her UIM claim fairly.).

As a result of Defendant's reckless acts regarding the Collins' ALE and attempted coercion to force the Collins' to settle their insurance claim for the dwelling despite having a bona fide dispute there is sufficient evidence that the Collins are entitle to punitive damages. *See Barnes*, 11 P.3d at 176. Therefore, Defendant's Motion for Summary Judgment on Plaintiffs' entitlement to punitive damages should be denied.

## III.

## CONCLUSION & PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, George Collins and Alrika Collins request Defendant's Motion for Summary Judgment be denied in its entirety and for such further relief to which they may be justly entitled.

Respectfully submitted,

*/s/Terry M. McKeever*
Terry M. McKeever
OBA#21751
tmm@fylaw.com
**FOSHEE & YAFFE LAW FIRM**
P.O. Box 890420
Oklahoma City, Oklahoma 73189

Telephone:     (405) 378-3033

And

Preston J. Dugas III
*Admitted Pro Hac Vice*
pdugas@dcclawfirm.com
**DUGAS & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:     (817) 945-3061
Facsimile:     (682) 219-0761
**ATTORNEYS FOR PLAINTIFFS**