IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) GEORGE COLLINS and <br> (2) ALRIKA COLLINS, <br><br> Plaintiffs, <br><br> v. <br><br> (1) STATE FARM FIRE AND <br> CASUALTY COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 22-cv-00318-JAR <br> ) <br> ) <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS AND BRIEF IN SUPPORT**

        Respectfully submitted,

        **ATKINSON, BRITTINGHAM,**
        **GLADD, FIASCO & EDMONDS**
        A PROFESSIONAL CORPORATION

        J. Andrew Brown, OBA #22504
        Andrew G. Wakeman, OBA #21393
        1500 ParkCentre
        525 South Main Street
        Tulsa, OK 74103-4524
        Telephone:  (918) 582-8877
        Facsimile:   (918) 585-8096
        Email:   dbrown@abg-oklaw.com
        *Attorneys for Defendant SFF&CC*

March 22, 2024

**COMES NOW** Defendant State Farm Fire and Casualty Company ("State Farm"), by and through its attorneys of record, J. Andrew Brown and Andrew G. Wakeman, of the law firm of Atkinson, Brittingham, Gladd, Fiasco & Edmonds of Tulsa, Oklahoma and pursuant to Fed. R. Civ. P. 56, hereby replies to Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment.

I.   INTRODUCTION

Plaintiffs' Response to State Farm's Motion for Summary primarily focuses on State Farm's discontinuation of Plaintiffs' additional living expenses ("ALE") benefits after State Farm paid the benefits for eleven (11) months, three (3) months longer than State Farm originally communicated to Plaintiffs. Plaintiffs allege State Farm breached its contract and did so in bad faith even though it was Plaintiffs that breached their Policy with State Farm for repeated failure to provide requested documentation.

State Farm worked diligently with Plaintiffs from the date of loss until just before this lawsuit was filed to ensure Plaintiffs were paid the correct amounts under Coverages A, B, and C. To date, State Farm has issued payments as follows related to Plaintiffs' claim: Coverage A - $286,343.09; Coverage B - $67,944.11; and Coverage C - $62,067.31, for a total of $416,354.51 under the Policy.

II.  **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Plaintiffs have failed to follow the rules of this Court and courts have disregarded arguments laced with "factual assertions" without evidentiary support as improper. LCvR 56.1(d) requires each statement to be followed by a citation to evidentiary material. Finally, LCvR56.1(e) permits this Court to deem uncontradicted material facts admitted if nonmovant does not comply with the local rule.

1

Plaintiffs' Response fails to adhere to LCvR56.1(d) as out of the thirty-four (34) undisputed facts put forth by State Farm that Plaintiffs purport to dispute, twenty-two (22) do not contain *any* citation to *any* evidentiary material as required by LCvR56.1(d). (Plaintiffs' Response to Statement of Undisputed Material Facts Nos. 28, 29, 33, 38, 47, 49, 95, 111, 112, 117, 126, 128, 129, 132, 134, 135, 138, 152, 153, 154, 155, and 156). The Tenth Circuit has held "it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004). Under LCvR 56.1, this Court may deem State Farm's Undisputed Material Facts Nos. 28, 29, 33, 38, 47, 49, 95, 111, 112, 117, 126, 128, 129, 132, 134, 135, 138, 152, 153, 154, 155, and 156 admitted for Plaintiffs' failure to comply with the local rules. Alternatively, this Court could strike Plaintiffs' Response for failure to comply with LCvR 56.1. *Gordon v. Ocwen Loan Servicing, LLC*, 2023 WL 3637064 (W.D. Okla. May 24, 2023) (striking motion for summary judgment and response for failure to comply with LCvR 56.1). The remainder of Plaintiffs' Responses to State Farm's Undisputed Material Facts are addressed below:

35. Admitted.

77. Denied. On February 17, 2021, State Farm sent a letter to Plaintiffs stating the estimated period of restoration to be August 31, 2021, and any expenses incurred under Coverage C after August 31, 2021, may be Plaintiffs' responsibility. [Dkt. No. 68-2, Bates No. 0799-801].

82. Admitted.

87. Denied. State Farm reasserts Numbered Paragraph 87 as it was written and cited.

93. Denied. Due to the claim file being approximately 8,000 pages, State Farm inadvertently cited the wrong Bates Number regarding Paragraph 93. The proper page, Claim File, Bates No. 0038, of the claim file is attached herein as Exhibit 1.

115. Denied. State Farm did not state it issued a "final" settlement in February 2021. State Farm reasserts Numbered Paragraph 115 as it was written and cited.

131. Denied. The deposition testimony cited by Plaintiff continues to show Mr. Collins repeatedly stated State Farm was incompetent without further explanation. [Dkt. No. 68-4 at p. 107:22-25].

133. Denied. Mr. Collins testified the numbers presented to the bankruptcy court were incorrect. [Dkt. 68-4 at p. 264:20-265:20]. Further, Mr. Collins' testimony regarding his bankruptcy proceeding shows a pattern of behavior, predominately, the inability to cooperate with attorneys and/or courts and presentation of evidence that may not be accurate.

136. Denied. *See* State Farm's Reply to Numbered Paragraph 133.

137. Denied. PA Rupert produced nearly 3,000 documents at 6:00 a.m. on the day of his deposition. Whether some of those documents were previously produced is irrelevant. PA Rupert did not provide State Farm's counsel with enough time to review what documents were included in the 3,000-page production. [Dkt. No. 68-3 at pp. 7:1-5; 9:3-9]. Further, State Farm issued a subpoena for these documents on May 22, 2023, and PA Rupert filed a Motion to Quash, which this Court denied. [Dkt. Nos. 35, 36]. Nevertheless, PA Rupert did not produce the requested documents until the day of his deposition on October 12, 2023. [Dkt. No. 68-3 at pp. 7:1-25].

140. Denied. PA Rupert testified he "deeply" considered Kevin Dandridge's report. [Dkt. No. 68-2, Bates No. 0042-0043; Dkt. No. 68-3, at pp. 175:21-176:1].

143. Denied. Mr. Dandridge testified his report was not intended to make claims decisions and it is common for disputes to occur regarding what may or may not be covered by insurance. [Dkt. No. 68-5, at. p. 60:10-20].

3

### III.   ARGUMENTS AND AUTHORITIES

#### *A. There are no Material Facts in Dispute*

Although Plaintiffs could have provided additional facts they contend are in dispute, Plaintiffs did not do so and, instead, have chosen to insinuate State Farm's Motion for Summary Judgment proves material facts are in dispute. However, out of thirty-four (34) undisputed facts put forth by State Farm that Plaintiffs purport to dispute, twenty-two (22) did not contain *any* citation to *any* evidentiary material as required by LCvR 56.1(d). As proof that summary judgment is precluded, Plaintiffs specifically point to Mr. VanDorn's Expert Report and his finding that the scope of loss and amount of loss were less than what Plaintiffs' engineer, safety consultant, and public adjuster found. Mr. VanDorn found that State Farm's payments were reasonable, thereby precluding Plaintiffs' claims for breach of contract and breach of the duty of good faith.

##### i.   Coverage A

Plaintiffs attempt to make a simple issue of coverage vastly confusing and allege State Farm has failed to pay benefits on a valid claim. However, despite the voluminous claim file, the facts before the Court are not complicated. On February 17, 2021, CS Stanley completed a dwelling estimate under Coverage A and issued a payment to Plaintiffs for ACV for $217,170.90. [Dkt. No. 68-2, Bates No. 0799-0801]. After receiving the Proof of Loss package submitted by PA Rupert with a dwelling estimate of $505,376.76, of which $166,236.00 was allocated for safety protocols, State Farm hired Mr. VanDorn to prepare a dwelling estimate and evaluate both State Farm and PA Rupert's estimate. [Dkt. No. 68-2, Bates No. 0042-0043]. Mr. VanDorn inspected the property on September 8, 2021, and submitted a dwelling estimate of $317,328.00. [Dkt. No. 68-2, Bates No. 0032-0033]. As a result, on October 11, 2021, State Farm issued a supplement payment to Plaintiffs for ACV for $69,172.19, for a total of $286,343.09 issued to Plaintiffs under

Coverage A. State Farm also informed Plaintiffs they could make a supplemental claim for $35,722.33 or the actual cost to repair, whichever was less, after repairs were completed, which would have resulted in Plaintiffs receiving $322,065.42. [Dkt. No. 68-2, Bates No. 0030, 1001-1003]. Plaintiffs even admit if the $166,236.00 allocated for safety protocols was excluded, Plaintiffs' experts believe the RCV to be $349,013.55 and the ACV to be $336,015.84. [Dkt. No. 72, p. 24, fn. 1]. Finally, State Farm's expert, Mr. VanDorn, is the only expert to have considered all of Plaintiffs' experts' opinions and then provided an Expert Report regarding said opinions. Plaintiffs have offered no rebuttal to Mr. VanDorn's Expert Report.

If Plaintiffs had rebuilt, Plaintiffs could have submitted a supplemental claim for $35,722.33. Had Plaintiffs done so, the amount paid to Plaintiffs would have been very close to the amount estimated by Plaintiffs' experts, with the exception of the safety protocols. This amounts to a legitimate dispute regarding coverage, not a factual dispute. It certainly does not arise to a breach of contract or evidence of bad faith by State Farm. As such, State Farm is entitled to summary judgment on Plaintiffs' breach of contract claim.

    ii. **Coverage B**

Again, Plaintiffs attempt to muddy the waters. Once Plaintiffs' public adjuster became involved in the case, there was significant conflicting communication with ServPro regarding whether ServPro should continue cleaning Plaintiffs' belongings. PA Rupert did not believe ServPro was properly cleaning the contents. As a result, CS Stanley and TM Richwine viewed Plaintiffs' contents stored at ServPro on September 29, 2021, to determine what was cleanable versus what needed to be replaced. [Dkt. No. 68-2, Bates No. 0033]. As would be expected with a fire, it was found some items needed to be replaced while others were cleanable. State Farm continued to issue supplemental payments for personal property as it gathered more information.

5

Plaintiffs state that PA Rupert determined the ACV of Plaintiffs' contents was $93,071.99, while State Farm only paid $67,944.11. Ultimately, some of the items included in PA Rupert's Content List ended up being cleaned and continued to be used by Plaintiffs. As a result, for Plaintiffs to insinuate State Farm did not pay the full amount under Coverage B is wrong as not every item on the PA Rupert's Content List needed to be replaced. State Farm made a reasonable and diligent effort to pay Plaintiffs what was owed under their Policy; therefore, it is entitled to summary judgment on Plaintiffs' claims.

### iii. Coverage C

State Farm worked tirelessly with Plaintiffs in an attempt to place them in long-term housing under Coverage C of their Policy. For instance, State Farm employed two (2) separate companies, ALE Solutions and Temporary Accommodations, Inc. to conduct housing searches. [Dkt. No. 68-2, Bates No. 0046, 0067]. By August, ALE Solutions had presented Plaintiffs with eight (8) different options, which Plaintiffs either turned down for various reasons, such as a lack of space for a home gym, or lost due to unresponsive on their part. [Dkt. No. 68-2, Bates No. 0041].

Yet, Plaintiffs' main complaint regarding State Farm's claim handling appears to be that State Farm discontinued ALE payments under Coverage C to Plaintiffs after eleven (11) months, on November 30, 2021. Plaintiffs have made numerous allegations that ALE payments were wrongfully stopped and wrongfully withheld despite an ongoing dispute regarding the scope of loss under Coverage A, and State Farm still owed Plaintiffs an additional six (6) months of ALE, up to April 12, 2022. [Dkt. No. 72, p. 31]. Plaintiffs also assert State Farm wrongfully attempted to add terms and conditions to Plaintiffs' ALE benefits. [Dkt. No. 72, p. 32]. Finally, Plaintiffs also assert State Farm's threat to pull Plaintiffs' ALE benefits was reckless and in complete

disregard of the Policy. [Dkt. No. 72, p. 35]. However, Plaintiffs did not comply with the Policy and as a result, State Farm has not breached the contract with Plaintiffs or engaged in bad faith. Each of Plaintiffs' allegations will be addressed in Section III (B) and (C), *infra*.

### B. State Farm did not add Additional Terms to Plaintiffs' Policy, Plaintiffs Failed to Comply with the Terms of Their Policy

As outlined in Plaintiffs' Policy, Plaintiffs had duties with which they had to comply after the loss, such as providing State Farm with requested records and documents. [Dkt. No. 68-1, No. 0031]. Further, Plaintiffs' Policy specifically provides, "[n]o action will be brought against us unless there has been compliance with the policy provisions." [Dkt. No. 68-1, No. 0040]. Due to the uncertainty and the conflicting information State Farm was receiving from Plaintiffs, PA Rupert, and Plaintiffs' agent, State Farm repeatedly requested documentation demonstrating that Plaintiffs intended to rebuild. [Dkt. No. 68-2, Bates No. 0024, 0026, 0027, 0028, 0069, 0915-0919, 1056]. Neither Plaintiffs nor PA Rupert provided State Farm with any evidence of repairs to the home or documentation indicating Plaintiffs intended to rebuild.

As previously mentioned, State Farm sent a letter to Plaintiffs dated February 17, 2021, estimating the time to rebuild to be six (6) and a half months and explained ALE benefits would be provided until August 31, 2021, after which point any additional expenses may be the responsibility of Plaintiffs or Plaintiffs' contractor. [Dkt. No. 68-2, Bates No. 0799-801]. On June 23, 2021, State Farm sent a letter to PA Rupert requesting:

> [A] detailed status of what Mr. and Mrs. Collins are planning to do, or have done regarding acquiring estimates for the repairs to their home. We have requested this information from you in our letters/emails dated April 26th, 2021, our phone conversation dated May 12th, 2021 and June 18th, 2021.

[Dkt. No. 68-2, Bates No. 0915-0918]. The June 23, 2021 Letter also set out Plaintiffs' duties after loss and included a reminder that Coverage C was limited to the shortest of the three (3) options

7

in the Policy.[1] *Id.* Nevertheless, State Farm extended Plaintiffs' ALE benefits beyond August 31, 2021, at the request of Plaintiffs while State Farm continued to request documentation from Plaintiffs regarding their intent to rebuild. Finally, on October 28, 2021, after Plaintiffs' failure to provide *any* documentation regarding repairs or the intent to rebuild, State Farm notified both Plaintiffs and PA Rupert that Plaintiffs' ALE benefits would be discontinued on November 30, 2021. [Dkt. No. 68, p. 19].

In a similar case against State Farm with identical policy provisions, the United States District Court for the Northern District of Georgia found plaintiffs had breached their policy with defendant (State Farm) by failing to provide requested documentation demonstrating plaintiffs intended to rebuild. *Raymond v. State Farm Fire and Causality Company*, 614 F.Supp.3d 1303, 1318 (2022). The court noted that despite State Farm's numerous requests for documentation from plaintiffs, and plaintiffs' failure to provide documentation, State Farm extended plaintiffs additional living expenses for an additional three (3) months beyond the initial deadline. *Id*. The court found that because plaintiffs had failed to comply with certain conditions precedent to bringing a lawsuit under the plain terms of the policy, namely conditions to cooperate with State Farm's investigation, they breached the terms of the policy, and defendant was entitled to summary judgment on plaintiffs' breach of contract claim. *Id.* at 1319.

The Northern District of Georgia did not find that the request for documentation regarding the rebuild was an added term and condition to ALE benefits as Plaintiffs allege here. Instead, it was found State Farm had a right, under the policy, which contained the same provision contained

---

[1] 1.   **Additional Living Expense**
When a *loss insured* causes the *residence premises* to become uninhabitable, *we* will pay the reasonable and necessary increase in cost incurred by an *insured* to maintain their normal standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: a) the time required to repair or replace the premises; b) the time required for *your* household to settle elsewhere; or c) 24 months. [Dkt No. 68-1, No. 0019].

within Plaintiffs' Policy, to request documentation regarding whether a rebuild would take place. Thus, State Farm has not altered the terms of its Policy with Plaintiffs as Plaintiffs have alleged. Further, requesting documentation regarding Plaintiffs' intent to rebuild does not amount to coercion. Instead, Plaintiffs and Plaintiffs' PA failed to comply with the terms of the Policy. State Farm did not breach its contract with Plaintiff or act in bad faith by discontinuing ALE and State Farm's Motion for Summary Judgment should be granted in full.

### C. State Farm Rightfully Refused to Continue Paying Plaintiffs' ALE Benefits and Punitive Damages are not Available to Plaintiffs

Plaintiffs allege they should be awarded punitive damages because State Farm's refusal to continue Plaintiffs' ALE benefits was reckless and in disregard of the Policy. However, as previously stated, State Farm did not breach the Policy with Plaintiffs, and instead, Plaintiffs breached the Policy by failing to provide documentation indicating an intent to rebuild. State Farm initially determined the time to rebuild to be six (6) and a half months and explained to Plaintiffs that it would pay ALE benefits until August 31, 2021, in a letter dated February 17, 2021. [Dkt. No. 68-2, Bates No. 0799-801]. Thereafter, State Farm began requesting documentation from Plaintiffs regarding any repairs made or an intent to rebuild. [Dkt. No. 68-2, Bates No. 0024, 0026, 0027, 0028, 0069, 0915-0919, 1056]. Despite never receiving documentation from Plaintiffs or Plaintiffs' PA, State Farm continued to pay ALE benefits for eleven (11) months. Further, State Farm gave Plaintiffs and Plaintiffs' PA a month's notice that it would be discontinuing ALE benefits on November 30, 2021.

Plaintiffs cannot show by clear and convincing evidence State Farm "recklessly disregarded its duty to deal fairly and act in good faith with its insured." *See* 23 O.S. § 9.1(B)(2). The undisputed facts of this case show Plaintiffs did not comply with the terms of the Policy. Specifically, Plaintiffs failed to provide State Farm with the documentation it requested regarding

Plaintiffs' intent to rebuild the property as required by Plaintiffs' Policy – Section I – Conditions – Your Duties After Loss. [Dkt. No. 68-1, No. 0031]. Further, Plaintiffs' Policy provides, "[n]o action will be brought against us unless there has been compliance with the policy provisions." [Dkt. No. 68-1, No. 0040]. State Farm extended Plaintiffs' ALE benefits three (3) months beyond the August 31, 2021 deadline until November 30, 2021. State Farm gave Plaintiffs ample opportunity to comply and provide documentation of an intent to rebuild. In addition, on October 28, 2021, State Farm also gave Plaintiffs notice of its intent to discontinue Plaintiffs' ALE benefits on November 30, 2021. [Dkt. No. 68, p. 19].

Plaintiffs chose not to provide the requested documentation. Even after State Farm discontinued Plaintiffs' ALE, State Farm continued to invite Plaintiffs to submit documentation showing an intent to rebuild, after which Plaintiffs' ALE would be reconsidered. [Dkt. No. 68-2, Bates No. 0024]. Plaintiffs chose not to provide such documentation. State Farm did not act in bad faith or in reckless disregard of Plaintiffs' rights by discontinuing Plaintiffs' ALE benefits after Plaintiffs repeatedly failed to comply with the terms of the Policy.

As to the remaining claims, it is clear that this is simply a legitimate dispute between insurer and insured about the extent of the alleged damages to Plaintiffs' dwelling and personal property. Because a legitimate dispute cannot amount to bad faith, it necessarily cannot amount to the level of culpability necessary for a punitive damages award. For this reason, State Farm is entitled to summary judgment on Plaintiffs' punitive damages claim.

## IV.     CONCLUSION

**WHEREFORE**, premises considered, State Farm Fire & Casualty Company respectfully requests this Court grant it summary judgment on Plaintiffs' breach of contract, bad faith, and punitive damages claims and any further relief this Court deems just and equitable.

      Respectfully submitted,

      **ATKINSON, BRITTINGHAM,
GLADD, FIASCO & EDMONDS**
   A Professional Corporation

/s/ J. Andrew Brown
   J. Andrew Brown, OBA #22504
   Andrew G. Wakeman, OBA #21393
   1500 ParkCentre
   525 South Main Street
   Tulsa, OK 74103-4524
   Telephone:  (918) 582-8877
   Facsimile:   (918) 585-8096
   Email:   dbrown@abg-oklaw.com
   *Attorneys for Defendant SFF&CC*

**CERTIFICATE OF MAILING**

  I hereby certify that on the <u>22nd</u> day of March, 2024, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Preston James Dugas, III
Dugas Cheek & Circelli, PPLC
1701 River Run, Ste 703
Fort Worth, TX 76107
Email:   pdugas@dcclawfirm.com

And

S. Alex Yaffe
Terry M. McKeever
FOSHEE & YAFFE
P.O. Box 890420
Oklahoma City, OK 73170
Email:   say@fylaw.com
Email:   tmm@fylaw.com
*Attorneys for the Plaintiffs*

                /s/ J. Andrew Brown